UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN REYES,

                                        Plaintiff,

                v.

STATE OF NEW YORK, DIVISION OF
STATE POLICE,

                                        Defendant.

No. 23-CV-2284 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Michael Howard Sussman, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Plaintiff*

Steven Neil Schulman, Esq.
Office of The Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Kevin Reyes ("Plaintiff") brings this Action against Defendant State of New

York, Division of State Police ("Defendant"), under Title VII, alleging that Defendant failed to

promote him and subjected him to inferior terms and conditions of employment on the basis of

his national origin, which ultimately caused his constructive discharge.  (*See generally* Compl.

(Dkt. No. 1).)  Before the Court is Defendant's Motion to Transfer Venue to the Western District

of New York (the "Western District"), pursuant to 28 U.S.C. § 1404(a) (the "Motion").  (Def.'s

Not. of Mot. to Transfer Venue ("Not. of Mot.") (Dkt. No. 11).)  For the following reasons,

Defendant's Motion is granted.

I.  Background

A.  Factual Background

Unless specified otherwise, the following facts are drawn from Plaintiff's Complaint and are taken as true in resolving the instant Motion.  Plaintiff resides in Hamburg, Erie County, New York.  (*See* Compl. ¶ 1, Ex. 1 at 2.)  According to Defendant, Plaintiff has resided in Hamburg since 2013.  (Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") at 2 (Dkt. No. 12); *see also* Decl. of Amanda W. Cox in Supp. of Mot. (Cox Decl.) at ¶ 3 (Dkt. No. 13).)  Defendant is headquartered in Albany, New York.  (*See* Compl. ¶ 2; *see also id.* Ex. 1 at 2.)

Plaintiff commenced working for Defendant on November 2, 1998, and was promoted to the rank of Lieutenant in 2013.  (*Id.* at ¶¶ 8–9.)  Plaintiff alleges, between 2016 and 2020, despite a positive recommendation from his immediate supervisor and his willingness to relocate, Defendant passed Plaintiff over for a promotion to the rank of Captain.  (*Id.* ¶¶ 12–13.)  During this period, forty-one other employees were promoted to Captain over Plaintiff, several of whom were white, less senior, and less experienced.  (*Id.* ¶¶ 13–14.)  From 2015 to 2019, Plaintiff was assigned as the "narcotics lieutenant for the western region of New York State."  (*Id.* ¶¶ 15–19.)  Despite his success in this position, Plaintiff contends that Defendant replaced him with a white male who lacked the requisite experience for the role and reassigned Plaintiff to a less prestigious and visible position.  (*Id.* ¶ 20.)  In September 2019, Plaintiff became "Lieutenant for the Office of Emergency Management-West."  (*Id.* ¶ 30.)  After this reassignment, Plaintiff was advised that he would be transferred from his predecessor's office in a building located in downtown Buffalo to "a converted broom closet at troop headquarters."  (*Id.* ¶ 31.)

A few months later, Plaintiff complained to his union, stating that he had been discriminated against on the basis of his national origin and requested that the union file an

employment discrimination complaint on his behalf.  (*Id.* ¶¶ 33–34.)  Plaintiff alleges that upon

learning about the complaint, Defendant "elevate[d] a minor personnel complaint and use[d] it as

a fulcrum to force plaintiff's retirement."  (*Id.* ¶¶ 35–36.)  As a result, Plaintiff retired on July 25,

2020.  (*Id.* ¶¶ 39–40.)

Plaintiff alleges two claims under Title VII of the Civil Rights Act of 1964: (1) "[b]y

failing to promote [P]laintiff [to] Captain in 2019–2020, [D]efendant intentionally discriminated

against him on the basis of his national origin[;]" and (2) "[b]y intentionally creating an

objectively hostile work environment on the basis of his national origin, [D]efendant

intentionally and constructively discharged [P]laintiff from employment[.]"  (*Id.* ¶¶ 41–44.)

Plaintiff seeks compensatory damages, attorneys' fees and costs, and any other order that the

interests of justice and equity require.  (*Id.* at 7.)

B.  Procedural Background

Plaintiff filed his Complaint on March 17, 2023.  (*See* Compl.)  On April 12, 2023,

Defendant requested a pre-motion conference in anticipation of a motion to transfer venue

pursuant to 28 U.S.C. § 1404(a) and asked that its time to respond to the Complaint be stayed

until the motion to transfer venue is decided.  (Dkt. No. 9.)  In response, the Court set a briefing

schedule for the motion to transfer venue.  (Dkt. No. 10.)  Pursuant to the schedule set by the

Court, Defendant filed its Motion on May 19, 2023.  (Not. of Mot.; Def.'s Mem.; Cox Decl.;

Decl. of Steven N. Schulman in Supp. of Mot. (Dkt. No. 14).)  On June 16, 2023, Plaintiff filed a

letter, requesting an extension of time to file an opposition, (Dkt. No. 15), which the Court

granted, (Dkt. No. 16).  Plaintiff filed an Opposition on July 4, 2023, (Pl.'s Mem. of Law in

Opp'n to Mot. ("Pl.'s Opp.") (Dkt. No. 17)), and Defendant filed a Reply on July 21, 2023,

(Def.'s Reply Mem. of Law in Further Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 18)).

## II.  Discussion

### A.  Legal Standards

Plaintiff's employment claims are subject to the venue provisions in Title VII, which

permit a suit in:

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]

42 U.S.C. § 2000e-5(f)(3); *see also Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824, 2021

WL 4442832, at *17 (S.D.N.Y. Sept. 28, 2021) ("Claims under Title VII are strictly governed by

Title VII's venue provisions, rather than by the general venue statute." (alteration adopted)

(quoting *Templeton v. Veterans Admin.*, 540 F. Supp. 695, 696 (S.D.N.Y. 1982))); *Bolar v.

Frank*, 938 F.2d 377, 378–79 (2d Cir. 1991) (per curiam) ("Almost uniformly, courts . . . have

applied section 2000e-5(f)(3) to determine venue in employment discrimination actions premised

on Title VII[.]").  However, while Title VII contains its own statutory venue provision, an action

brought under the federal employment discrimination laws, including Title VII, may still be

subject to transfer.  Specifically, a court may order the transfer of case filed in the proper venue

"[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district

or division where it might have been brought[.]"  28 U.S.C. § 1404(a); *see also Speedfit LLC v.

Woodway USA, Inc.*, 642 F. Supp. 3d 429, 437 (S.D.N.Y. 2022) (same); *Ayala-Branch v. Tad

Telecom, Inc.*, 197 F. Supp. 2d 13, 14 (S.D.N.Y. 2002) (same).

In assessing whether a transfer to another district is appropriate in the interest of justice

under 28 U.S.C. § 1404(a), courts first determine "whether the action could have been filed in

the transferee forum."  *Steck v. Santander Consumer USA Holdings Inc.,* No. 14-CV-6942, 2015

4

WL 3767445, at *3 (S.D.N.Y. June 17, 2015). If so, courts then consider whether "the transfer

must be in the interest of justice and convenience of the parties and witnesses." *In re*

*CenturyLink, Inc. Sec. Litig.*, No. 13-CV-3839, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18,

2014) (internal quotation marks and citation omitted). In conducting this inquiry, court must

balance the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and
> relative ease of access to sources of proof; (3) the convenience of the parties; (4)
> the locus of operative facts; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the relative means of the parties; (7) the
> forum's familiarity with the governing law; (8) the weight accorded the plaintiff's
> choice of forum; and (9) trial efficiency and the interest of justice, based on the
> totality of the circumstances.

*MBCP Peerlogic LLC v. Critical Path, Inc.*, 2002 WL 31729626, at *3 (S.D.N.Y. 2002); *see also*

*N. Food I/E, Inc. v. OCM Globe Inc.*, No. 21-CV-1813, 2022 WL 2812204, at *8 (E.D.N.Y. Mar.

28, 2022) (same); *Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14-CV-8513, 2015

WL 1611391, at *4 (S.D.N.Y. Apr. 10, 2015) (same). "There is no rigid formula for balancing

these factors and no single one of them is determinative." *Larew v. Larew*, No. 11-CV-5771,

2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012) (quoting *Citigroup Inc. v. City Holding Co.*, 97

F. Supp. 2d 549, 561 (S.D.N.Y. 2000)); *see also Steen v. Assurant, Inc.*, No. 22-CV-04571, 2023

WL 4406303, at *7 (S.D.N.Y. July 6, 2023) (same).

     "As a general matter, a 'plaintiff's choice of forum should not be disturbed unless the

balance of the factors tips heavily in favor of a transfer.'" *Alpha Indus., Inc. v. Alpha Clothing*

*Co. LLC*, No. 21-CV-87, 2021 WL 2688722, at *3 (S.D.N.Y. June 30, 2021) (alterations

adopted) (quoting *MasterObjects, Inc. v. Amazon.com, Inc.*, No. 20-CV-3478, 2020 WL

6075528, at *1 (S.D.N.Y. Oct. 15, 2020)); *see also New York Marine & Gen. Ins. Co. v. Lafarge*

*N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (same); *Sadat v. State Univ. of New York Upstate*

*Med. Univ.*, No. 19-CV-5053, 2019 WL 4511555, at *1 (S.D.N.Y. Sept. 19, 2019) (same).  The

party moving for a § 1404 transfer bears the heavy burden of demonstrating that a plaintiff's

choice of forum should be set aside.  *See Knowles-Carter v. Feyonce, Inc.*, No. 16-CV-2532,

2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017); *Children's Network, LLC v. PixFusion

LLC*, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010).  Simply put, a plaintiff's choice of forum

should not be disturbed unless a defendant has made a clear and convincing showing that the

balance of convenience weighs heavily in favor of the defendant.  *See Casper Sleep, Inc. v.

Nectar Brand LLC*, No. 18-CV-4459, 2019 WL 4727496, at *4 (S.D.N.Y. Sept. 27, 2019);

*Linzer v. EMI Blackwood Music*, 904 F. Supp. 207, 216 (S.D.N.Y. 1995).  In deciding whether

the movant has met its burden, "a court may consider material outside of the pleadings."  *Mohsen

v. Morgan Stanley & Co., Inc.*, No. 11-CV-6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23,

2013); *see also Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y.

2003).

### B.  Analysis

Defendant seeks a transfer of venue under 28 U.S.C. § 1404(a).  As noted, although

Plaintiff's choice of venue is afforded great deference, *see Rush v. Fischer*, 923 F. Supp. 2d 545,

556–57 (S.D.N.Y. 2013), it is not the only consideration for purposes of the transfer analysis.

### 1.  Propriety of Transferee Forum

At the outset, the Court must decide whether the Action could have been brought in the

transferee forum.  *See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525,

528 (S.D.N.Y. 2004).  Here, because 42 U.S.C. § 2000e-5(f)(3) allows a plaintiff to bring suit in

"*any* judicial district in the State in which the unlawful employment practice is alleged to have

been committed," *id.* (emphasis added), the Western District could have been a proper forum for

the instant lawsuit, as Plaintiff was employed in New York State during all relevant periods to his Complaint, (*see, e.g.*, Compl. ¶ 15). Indeed, the Western District could have been an appropriate venue for this lawsuit also because the Complaint confirms that during all relevant periods, Plaintiff's employment was specifically related to the western region of New York, including when he was "narcotics lieutenant for the western region of New York State," CNET-West from 2015-2019, (*see* Compl. ¶¶ 15, 17) and "Lieutenant for the Office of Emergency Management-West" from 2019 until his retirement in 2020, (*see id.* ¶¶ 30, 39). *See Steck*, 2015 WL 3767445, at *3 (noting that "[v]enue is permitted in 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred'" (quoting 28 U.S.C. § 1391(b)(2))).

Having satisfied this preliminary inquiry, the Court next assesses the various factors listed above to determine whether to grant Defendant's motion.

### 2.  Interest of Justice and Convenience of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29–30 (E.D.N.Y. 2014) (quoting *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)). Here, as Defendant points out, many of the potential and critical witnesses in this suit are located in the Western District. (*See* Def.'s Mem. at 8–9.) This includes members of the Hamburg Village and Hamburg Town Police Departments, who were involved in the disciplinary matter that Plaintiff alleges led to his constructive discharge. (*Id.* at 8; Cox Decl. ¶ 9.) In addition, former ADS Kennedy, who Plaintiff holds responsible for much of his allegedly unfavorable treatment, is retired in the Buffalo area. (Def.'s Mem. at 8; *see also* Compl. ¶¶ 21–26, 30–34, 37; Cox Dec. ¶ 7.)

7

Furthermore, other defense witnesses are located in the Western District, including "current Troop A Commander Staniszewski, who complained about the underperformance of Plaintiff's CNET-West Unit; [Captain] Lyons, Plaintiff's direct supervisor at the time of the latter's retirement; [Lieutenant] Thompson, who was appointed commander of VGNET-West, allegedly instead of [P]laintiff; and Captain Edwards, who investigated the Hamburg Town and Village Police complaint." (Def.'s Mem. at 8; *see also* Cox Decl. ¶¶ 7, 9.) Some potential witnesses are located in the Northern District of New York (the "Northern District"), including "Major Hall, the other official named by Plaintiff in the Complaint; Plaintiff's CNET supervisors in Albany, to whom he reported remotely from his office in the Western District; and witnesses pertaining to NYSP's practices in promotions to captain." (Def.'s Mem. at 8; *see also* Cox Decl. ¶¶ 5, 7, 8, 10.)

　　　　Plaintiff, on the other hand, has not identified *any* witnesses located in the Southern District and in fact, acknowledges that at least certain critical witnesses are located in the Northern, not Southern, District. (*See* Pl.'s Opp. at 7–8.) Moreover, with regard to the convenience of the parties, Plaintiff would not suffer any inconvenience from a transfer to the Western district, as that is his home district. (Def.'s Mem. at 8, 10; *see also* Cox Decl. ¶ 3; Compl. Ex. 1 at 2.) *See King v. Aramark Servs.*, Inc., No. 19-CV-77, 2019 WL 3428833, at *4 (W.D.N.Y. July 30, 2019) (explaining that weight given to a plaintiff's choice of forum "is diminished . . . 'where plaintiff's residence is not the chosen forum'" (quoting *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012))); *see also Dumont v. Corr. Corp. of Am.*, No. 14-CV-209, 2016 WL 3129163, at *6 (D. Vt. June 2, 2016) (noting that transfer "may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's

inconvenience" (quoting *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013))).  Relatedly, as to the relative means of the parties, because the requested transfer is to Plaintiff's home district, Plaintiff fails to demonstrate any burden, financial or otherwise, he may incur from the transfer.  Therefore, the substantial convenience afforded to many of the witnesses in this matter and the absence of inconvenience to the Plaintiff militate in favor of a transfer from the Southern to the Western District.

The next factor, "[t]he location of relevant documents[,] is largely a neutral factor in today's world of faxing, scanning, and e-mailing documents."  *Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007); *see also Akers Biosciences, Inc. v. Martin*, No. 14-CV-8241, 2015 WL 1054971, at *6 (S.D.N.Y. 2015) ("[T]he location of documents is not an important consideration in the age of instantaneous electronic communication and overnight shipping.")  Accordingly, this factor does not impact the calculus. *See Mohsen*, 2013 WL 5312525 at *6 ("[T]he location of documents and records is not a compelling consideration when records are easily portable." (internal quotation marks and citation omitted)); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010) ("[T]he Court does not view this factor as particularly significant given the technological age in which we live, where there is widespread use of, among other things, electronic document production.").  However, although this factor does not carry much weight, it is worth noting that that the location of documents does not favor keeping the suit in the Southern District because nothing of relevance to the lawsuit occurred there.  Rather, the records relating to Plaintiff's claim that numerous other individuals were promoted over him are located in the Northern District, in Albany, where such decisions were made.  (Def.'s Mem. at 10; *see also* Cox Decl. ¶ 8.)  Furthermore, as Defendant notes, records of Plaintiff's own performance may also be found

in the Western District, where he worked and where the complaint against him was investigated. (Def.'s Mem. at 10; *see also* Cox Decl. ¶¶ 8–9.)

With the respect to the locus of the operative facts, Plaintiff has worked in the Western District during the relevant time period to this lawsuit.  (*See* Compl. ¶¶ 15, 30.)  In fact, he has worked in the Western District since he attained the rank of lieutenant in 2013.  (Cox Decl. ¶ 12.) Plaintiff does not allege any discrimination occurred prior to his promotion to lieutenant.  (Def.'s Mem. at 9.)  Accordingly, most, if not all, of the events giving rise to Plaintiff's claims arose in the Western District.  Any events that did not take place there, occurred in the Northern District at Defendant headquarters, (Compl. ¶ 2), not the Southern District.  Thus, a transfer of venue to Western District, with regard to the locus of operative facts, is appropriate.  *See Penrose v. New York Life Ins. Co.*, No. 22-CV-2184, 2023 WL 6198249, at *4 (S.D.N.Y. Sept. 22, 2023) ("Because the core inquiry under § 1404(a) is where the center of gravity of the litigation is located, courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (internal quotation marks and citation omitted) (quoting *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241, 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014))); *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (same).

Concerning the availability of process to compel the attendance of unwilling witnesses, Defendant notes that the main concern is related to the attendance at trial of the Town and Village of Hamburg Police, who are not subject to Defendant's control.  (Def.'s Mem. at 9.) Defendant does acknowledge that Federal Rule of Civil Procedure 45(c)(1)(B)(ii) could compel a non-party's appearance at trial, even beyond a 100-mile limit, but only if the witness "would not incur substantial expense" and that the comments to the rule provide that the subpoenaing party

can pay the witnesses' expenses. *See* Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment (subdivision (c)). However, such an expensive resolution would be cumbersome and could be entirely avoided if venue were in the Western District where the Town and Village of Hamburg Police are located. Accordingly, this factor weighs, if not heavily, at least partially in favor of transfer.

As to "[a] forum's familiarity with the governing law," this is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Pasini v. Gruppo Editoriale, Inc.*, No. 21-CV-6697, 2022 WL 1693667, at *2 (E.D.N.Y. May 26, 2022) (internal quotation marks and citation omitted); *see also Austin Env't Corp. v. Margarita Express, LLC*, No. 21-CV-4385, 2022 WL 1443356, at *5 (S.D.N.Y. May 6, 2022) (same). Here, with respect to Plaintiff's Title VII claims, "[a]ll federal courts are presumed to be fully capable of applying nationally applicable legal principles." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998). Thus, this factor weighs in favor of a transfer, or at least does not weigh against it.

With regard to Plaintiff's choice of forum, as noted above, the Court generally accords this factor considerable weight. *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, No. 10-CV-376, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010). However, "a plaintiff's choice of forum is accorded substantially less deference when the forum is 'neither the plaintiff's home nor the place where the operative facts of the action occurred.'" *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014) (quoting *Hall v. S. Orange*, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000)). Under those circumstances, the importance of the plaintiff's choice of forum measurably diminishes. *See Atari Interactive, Inc. v. Target Corp.*, No. 19-CV-3111, 2019 WL 6728860, at *4 (S.D.N.Y. Dec. 10, 2019); *Paysafe Holdings UK Ltd.*

*v. Accruit, LLC*, No. 18-CV-75, 2019 WL 1115054, at *4 (S.D.N.Y. Mar. 11, 2019) ("[T]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." (internal quotation marks and citation omitted)).

Here, Plaintiff does not live in his chosen forum, nor is there is a clear and significant connection, if any, between Plaintiff's forum choice and the underlying events.  The only reason Plaintiff in support of his argument to remain in the Southern District is his belief "that members of his influential state agency might wield greater weight on a jury in their home district than in the [Southern District] and because he believes his opportunity to obtain a fair trial uninfluenced by jurors' knowledge of those involved is far enhanced in [the Southern] district."  (Pl.'s Opp. at 5.)  Plaintiff is mistaken.  The Western District is the Plaintiff's home district, not the state agency's, which is headquartered in the Northern District, and thus, Plaintiff's fear of any bias is significantly undermined.  Moreover, Plaintiff offers no evidence to support his rather harsh assessment of jurors in the various districts of New York State.  Accordingly, without any other reason to remain in the Southern District, the weight afforded to Plaintiff's chosen forum is severely diminished.

In light of the § 1404(a) factors discussed above, the interest in judicial efficiency and the interests of justice support a transfer.  The Western District has a significant connection to this case, as several important witnesses are located there, Plaintiff currently lives there, and numerous, if not all, material facts concerning this lawsuit took place there.  Although the Court respects Plaintiff's preference to remain in this District for purposes of litigation, the importance of his preference is substantially weakened by the totality of circumstances.  Accordingly, Defendant's Motion is granted.

## III.  Conclusion

For the reasons stated above, the Court concludes that venue should be transferred to the Western District.  In addition, because the Court grants the Motion, Defendant's request that the time to respond to the Complaint be stayed until the Motion is decided, (*see* Dkt. No. 9), is dismissed as moot.  The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 11), and transfer the case to the Western District forthwith.

SO ORDERED.

DATED:        November 21, 2023
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE